1    HONORABLE RONALD B. LEIGHTON

2

3

4

5

6
         UNITED STATES DISTRICT COURT
7        WESTERN DISTRICT OF WASHINGTON
              AT TACOMA
8

SKOKOMISH INDIAN TRIBE,                    CASE NO. C16-5639 RBL
9
                    Plaintiff,
                                           ORDER GRANTING
10                                         DEFENDANTS' MOTION TO
        v.                                 DISMISS
11
                                           [DKT #15]
     LEONARD FORSMAN, et al.,
12
                    Defendant.
13

14        THIS MATTER is before the Court on Defendant Suquamish Indian Tribe and its Tribal

15   Councilmembers' Motion to Dismiss Plaintiff Skokomish Indian Tribe's claims against them.

16   [Dkt # 15]. Skokomish Tribe sued Councilmembers and Fisheries Director of the Suquamish

17   Tribe, alleging they violated Skokomish's hunting rights by allowing their tribal members to

18   hunt in Skokomish's territory. Skokomish's complaint names the Defendants: Suquamish Tribal

19   Councilmembers Leonard Forsman, Bardow Lewis, Nigel Lawrence, Robin Sigo, Luther Mills,

20   Jr., Rich Purser, and Sammy Mabe, and the Suquamish Tribe's Fisheries Director, Robert Purser,

21   Jr.

22        Skokomish claims the Point No Point Treaty reserved to it the primary and exclusive

23   hunting right within "Twana Territory." The Skokomish Tribe is a successor in interest to the

24

1  Skokomish and Twana people. The 1855 Treaty of Point No Point is one of several treaties

2  executed by Governor Stevens reserving hunting and fishing rights to its signatory tribes (the

3  "Stevens Treaties"). The signatory tribes of the Point No Point Treaty include the Skokomish

4  Tribe, the Jamestown S'Klallam Tribe, the Lower Elwha Tribal Community, and Port Gamble

5  S'Klallam. Although much attention has been given to treaty fishing rights of Pacific Northwest

6  Tribes, hunting was nonetheless an integral part of Northwest Indian culture.[1]

7      In 1985, this Court confirmed Skokomish's primary fishing right in Twana Territory–

8  roughly, Hood Canal. *See US v. Washington*, 626 F. Supp. 1405, 1486–87 (W.D. Wash. 1985).

9  Skokomish argues the Court also confirmed its primary *hunting* right in Twana Territory.

10  Skokomish alleges Defendants unlawfully promulgated and enforced hunting regulations

11  allowing Suquamish hunting in Twana Territory. It seeks declaratory and injunctive relief

12  confirming its primary hunting right and enjoining the Suquamish Tribe's enforcement of

13  unlawful hunting in Twana Territory.

14      Defendants seek dismissal of Skokomish's claims on four grounds: (1) Skokomish lacks

15  Article III standing, (2) the suit against the Suquamish Tribe is barred by sovereign immunity,

16  (3) legislative immunity precludes suit against Suquamish Tribal Officials promulgating hunting

17  regulations, and (4) Skokomish failed to join the Suquamish Tribe and other Stevens Treaty

18  Tribes as indispensable parties. Defendants point out that Skokomish recently sued a host of state

19  officials, asserting the same claims and seeking similar relief, in *Skokomish Indian Tribe v.*

20

21  ─────────────────────

22      [1] *See* Bradley I. Nye, *Where Do the Buffalo Roam? Determining the Scope of American Indian Off-Reservation Hunting Rights in the Pacific Northwest*, 67 WASH. L. REV. 175, 176–77 (1992) (noting Northwest Indians, including salmon-dependent tribes, used game as a source of

23  food, clothing, and shelter, and that hunting was reflected in Indian religious practices and mythology. While off-reservation hunting rights have become politically important, they are also

24  an essential means of sustenance, particularly for Indians at or below the poverty level).

1  *Goldmark*, 944 F. Supp. 2d 1168, 1193 (W.D. Wash. 2014).  Judge Robart dismissed that case

2  because the adjudication of the signatory tribes' hunting rights in the region required Skokomish

3  to join all of the tribes in one action, which it could not do.

4    Skokomish argues this Court has jurisdiction because Defendant's unlawful hunting

5  caused a concrete injury, redressable by a favorable judgement of this Court. Skokomish also

6  argues *Ex Parte Young*, an exception to the Suquamish Tribe's sovereign immunity, allows this

7  Court to grant injunctive relief enjoining the Suquamish Tribal Officers' unlawful acts. It argues

8  that legislative immunity does not bar the suit because Suquamish Tribal Officers acted in their

9  administrative and executive, not legislative, capacities in passing and enforcing hunting

10  regulations. Finally, Skokomish argues other parties need not be joined because its primary

11  hunting right is settled law guaranteed by Article IV of the Point No Point Treaty and confirmed

12  by the court in *U.S. v. Washington*.

13  **I.    SUBJECT MATTER JURISDICTION**

14    **A.  Standard of Review**

15    A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations

16  in a light most favorable to the plaintiff, the action: (1) does not arise under the Constitution,

17  laws, or treaties of the United States, or does not fall within one of the other enumerated

18  categories of Article III Section 2 of the Constitution; (2) is not a case or controversy within the

19  meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *See Baker v.*

20  *Carr*, 369 U.S. 186, 198 (1962); *see also D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp.

21  1062, 1063 (W.D. Wash. 1986); 28 U.S.C. §§ 1331 and 1346. When considering a motion to

22  dismiss under Rule 12(b)(1), a court is not restricted to the face of the pleadings, but may review

23  any evidence to resolve factual disputes concerning the existence of jurisdiction. *See McCarthy*

24

1   *v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *see also*

2   *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is

3   presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *See*

4   *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *see also Stock West, Inc. v.*

5   *Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, Skokomish bears the

6   burden of establishing subject matter jurisdiction. *See Stock West*, 873 F.2d at 1225.

7           Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

8   theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v.*

9   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

10  facts to state a claim for relief that is plausible on its face. *See Aschcroft v. Iqbal*, 566 U.S. 662,

11  678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

12  content that allows the Court to draw the reasonable inference that the defendant is liable for the

13  misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

14  to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

15  a cause of action will not do. Factual allegations must be enough to raise a right to relief above

16  the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and

17  footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-

18  unlawfully-harmed-me-accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*).

19          On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

20  amend the pleading was made, unless it determines that the pleading could not possibly be cured

21  by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

22  247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether

23

24

1 there is liability as a matter of substantive law, a court may deny leave to amend. *See Albrecht v.*

2 *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

3   **B.  Article III Standing**

4      Defendants argue the Court lacks subject matter jurisdiction because Skokomish failed to

5 establish causation or redressability with respect to any concrete injury. It argues no Suquamish

6 Tribe members hunted or acquired game within Skokomish territory or diminished Skokomish's

7 Treaty resources. It also argues any effective order must bind the Suquamish Tribe and other

8 Stevens Treaty Tribes not party to this case, but because these indispensable parties cannot be

9 joined due to sovereign immunity, the Court cannot redress Skokomish's alleged injury.

10      Skokomish asserts Defendants' unlawful hunting regulations caused actual, potential, and

11 future loss of its Treaty resources, and diminished its self-governance powers. It claims ongoing

12 economic harm, including expenditure of Skokomish's resource management funds to mitigate

13 Defendants' unlawful authorization of hunting in Twana Territory. Skokomish also argues

14 Defendants' regulations essentially unlawfully clouded title to Skokomish's Treaty resources.

15 Skokomish claims its requested relief will only operate against the named defendants, not the

16 Suquamish Tribe or other signatory tribes because its primary hunting right in Twana Territory is

17 settled law.

18      As the party invoking federal jurisdiction, Skokomish bears the burden of establishing

19 standing under Article III's cases and controversy requirement. *See Lujan v. Defenders of*

20 *Wildlife*, 504 U.S. 555, 561 (1992). Skokomish must demonstrate that it suffered or is

21 "imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable

22 to the challenged action of the defendant and likely to be redressed by a favorable judicial

23 decision." *Lexmark Intern., Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1386

24

1   (2014). Despite having the ultimate burden at trial, "[a]t the pleadings stage, general factual

2   allegations of injury resulting from the defendant's conduct may suffice, for on a motion to

3   dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to

4   support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497

5   U.S. 871, 889 (1990)).

6       To establish causality, Skokomish must prove its injuries are "causally linked or fairly

7   traceable" to Defendants' unlawful hunting regulations "and not the result of misconduct of

8   some third party not before the Court." *See Washington Environmental Council v. Bellon*, 732

9   F.3d 1131, 1141 (9th Cir. 2013). Causation will lacks constitutional muster "where the causal

10  chain involves numerous third parties whose independent decisions collectively have a

11  significant effect on plaintiff's injuries." *See id.* at 1142 (quoting *Native Village of Kivalina v.*

12  *Exxon Mobile Corp.*, 696 F.3d 849, 867 (9th Cir. 2012)).

13      Assuming without deciding Defendants' hunting regulations violate Skokomish Treaty

14  rights, Skokomish has and will continue to experience economic loss, diminished treaty

15  resources, and weakened self-governance. It thus sufficiently asserted an ongoing concrete and

16  particularized injury. Skokomish also satisfied the causation requirement. Regardless of third

17  party actors, Defendants' hunting in Twana Territory necessarily reduces Skokomish's self-

18  governance powers and requires expenditures to respond to resulting resource management

19  issues. Finally, Skokomish's requested injunctive and declaratory relief will likely redress its

20  injury. Enjoining Defendants' issuance of Suquamish hunting licenses in Twana Territory would

21  unquestionably restore at least some of Skokomish's self-governance powers and reduce

22  resource management expenditures. Thus, Skokomish established Article III standing and the

23  Defendants' Motion to Dismiss on that basis is DENIED.

24

1    **C. Sovereign Immunity**

2       The Defendants argue sovereign immunity precludes suit against the Suquamish Tribe.

3    Skokomish responds that the suit is against individual defendants, not the tribe, and *Ex Parte*

4    *Young* permits claims for injunctive relief against officials acting unlawfully. It claims the

5    Suquamish Tribal Officers are regulating hunting in violation of the Point No Point Treaty.

6    Skokomish also argues that even if the suit was against the tribe, the Court has jurisdiction

7    because Suquamish waived its sovereign immunity in *U.S. v. Washington,* when it agreed to

8    litigate there the extent of its fishing and hunting rights under the Point No Point Treaty.

9       Defendants argue that *Ex Parte Young* does not apply because Skokomish's requested

10   relief seeks to restrain the Tribe, not the named officials; indeed, they claim Skokomish actually

11   seeks to litigate and establish tribal hunting rights under the treaty for the first time. Defendants

12   vehemently deny that *U.S. v. Washington* ever determined any treaty hunting rights, or that

13   Suquamish waived its sovereign immunity in regard to any hunting rights claims. And, even if

14   *U.S. v. Washington did* address hunting rights, Defendants contend this Court still lacks

15   jurisdiction, because Skokomish must file its claim there, in accordance with the *U.S. v.*

16   *Washington*'s requirements for subproceedings.

17      As a federally recognized Indian Tribe, the Suquamish enjoy sovereign immunity from

18   suit. *See Bodi v. Shingle Springs Bank of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016)

19   ("Among the core aspects of sovereignty that tribes possess is the common-law immunity from

20   suit traditionally enjoyed by sovereign powers.") (Internal quotations and citations omitted).

21   Sovereign immunity bars suit absent a clear waiver, congressional abrogation, or application of

22   the *Ex Parte Young* exception. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indians*

23   *Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *see also Michigan v. Bay Mills Indian*

24

1    *Community*, 134 S. Ct. 2024, 2035 (2014). A waiver "cannot be implied but must be

2    unequivocally expressed" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), and a waiver

3    as to one claim does not waive sovereign immunity as to other claims. *See Oklahoma Tax*

4    *Comm'n*, 498 U.S. at 509.

5         *Ex Parte Young* provides a limited exception to sovereign immunity, and holds that it

6    does not bar suits seeking "injunctive relief against individuals, including tribal officers,

7    responsible for unlawful conduct." *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024,

8    2035 (2014). To invoke this exception, the plaintiff must allege that the named defendants have a

9    "requisite enforcement connection" to the challenged law. *Burlington Northern & Santa Fe Ry.*

10   *Co. v. Vaughn*, 509 F.3d 1085, 1092–93 (9th Cir. 2007) (holding the *Ex Parte Young* exception

11   did not apply to tribal chairmen responsible only for adopting, not enforcing, a challenged tax).

12   The enforcement connection must be "fairly direct." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F. 2d 697,

13   704 (9th Cir. 1992). A generalized duty to enforce the law is insufficient to subject an official to

14   suit under *Ex Parte Young*. *Id.*

15        In determining whether the *Ex Parte Young* exception applies, the Court conducts a

16   straightforward inquiry into whether Skokomish "has alleged an ongoing violation of federal law

17   and seeks prospective relief." *Burlington Northern*, 509 F.3d at 1092; *see also Verizon Md., Inc.*

18   *v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Skokomish must at a minimum,

19   however, allege a "viable claim that the tribal officials acted outside their authority, so as to

20   subject them to suit." *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269,

21   1271 (9th Cir. 1991). *Ex Parte Young* does not apply where "the relief sought will operate

22   against the sovereign," such as when the requested relief requires "affirmative actions by the

23   sovereign or disposition of unquestionably sovereign property." *See Dawavenewa v. Salt River*

24

1   *Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1160 (9th Cir. 2002) (citation

2   omitted).

3        If Skokomish were suing the Suquamish Tribe, this court would lack jurisdiction to hear

4   that case because the tribe's sovereign immunity precludes suit. Since Skokomish sued only the

5   Suquamish Officers in their official capacities, however, *Ex Parte Young* provides an exception

6   to sovereign immunity. Yet only one of the named Defendants has the "requisite enforcement

7   connection" to the allegedly unlawful hunting ordinance. The Suquamish Fisheries Director

8   oversees hunting enforcement and allocates both short term and annual hunting permits to

9   Suquamish Tribal members. The Fisheries Director thus exhibits the requisite enforcement

10  connection. Conversely, Suquamish Tribal Councilmembers have only the authority to

11  promulgate and generally manage hunting ordinances. Unlike the Fisheries Director, the

12  Councilmembers' generalized duty to enforce ordinances is insufficient to subject them to suit

13  under *Ex Parte Young*.

14        Assuming, without deciding, that the Point No Point Treaty grants Skokomish the

15  primary right to hunt within Twana Territory, the Skokomish properly alleged the Suquamish

16  Fisheries Director unlawfully licensed Suquamish hunting within Twana Territory. Skokomish

17  need only allege, not prove, an ongoing violation of the Treaty right. The Court need not

18  determine the merits of Skokomish's argument in order to decide whether *Ex Parte Young*

19  applies. Again assuming Skokomish's primary hunting right is established, its requested

20  injunction will not operate against the Suquamish Tribe because it will merely prevent the

21  Fisheries Director from issuing unlawful hunting licenses. A declaration establishing (or

22  confirming) Skokomish's primary hunting right will not require affirmative actions from the

23  Suquamish Tribe, and it does not involve property that unquestionably belongs to Suquamish.

24

1   For the foregoing reasons, the Suquamish Fisheries Director is subject to suit under the *Ex Parte*

2   *Young* exception to sovereign immunity. The motion to dismiss him on the basis of sovereign

3   immunity is DENIED. Conversely, the motion to dismiss Suquamish Tribal Councilmembers on

4   the basis of sovereign immunity is GRANTED because they lack the requisite enforcement

5   connection to the challenged regulation.

6   **D.  Legislative Immunity**

7   Defendants argue that even if sovereign immunity does not bar Skokomish's claims, they

8   are barred by legislative immunity. They argue the Suquamish Tribal Councilmembers' adoption

9   of the Fisheries Director's hunting recommendations are plainly legislative actions protected by

10  legislative immunity.

11  Skokomish does not deny Defendants' adoption of hunting regulations is subject to

12  legislative immunity. Rather, Skokomish argues its requested relief seeks to enjoin Defendants

13  from exercising their executive authority (including issuing hunting licenses, harvest monitoring,

14  and data collection) to unlawfully open hunting within Skokomish Territory. The unlawful action

15  they seek to enjoin is executive and administrative in nature, not legislative, and not entitled to

16  legislative immunity.

17  Defendants are immune from suit while acting in their legislative capacities. *See Bogan v.*

18  *Scott-Harris*, 523 U.S. 44, 49 (1998) ("The principle that legislators are absolutely immune from

19  liability for their legislative activities has long been recognized in Anglo-American law.").

20  Legislative immunity applies to both claims for damages and to claims for injunctive relief. *See*

21  *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 959 (9th Cir. 2010) (citing *Supreme Court of*

22  *Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732–33 (1980)). Defendants are not

23  immune, however, if acting in their executive or administrative capacities. *See Bechard v.*

24

1    *Rappold*, 287 F.3d 827, 829 (9th Cir. 2002). In determining whether an act is legislative in

2    character the Court must consider whether (1) it involved ad hoc decision making, or the

3    formulation of policy; (2) it applies to a few individuals, or to the public at large; (3) it is

4    formally legislative in character; and (4) bears the hallmarks of traditional legislation. *See Cmty*

5    *House*, 623 F.3d at 960.

6         Skokomish correctly concedes that legislative immunity protects Suquamish Tribal

7    Officials promulgating hunting regulations, because such activity is unquestionably legislative in

8    character. It is also true that the Suquamish Fisheries Director is not entitled to legislative

9    immunity because his authority to issue hunting licenses involves ad hoc decision making,

10   applied to individuals, that is non-legislative in character and does not bear the hallmarks of

11   traditional legislation. Conversely, Suquamish Councilmembers are entitled to legislative

12   immunity because they acted legislatively in promulgating and enforcing the challenged

13   ordinance, and there is no evidence that they engaged in non-legislative functions.

14         Accordingly, the Defendants' motion to dismiss Suquamish Tribal Councilmembers on

15   the basis of legislative immunity is GRANTED. Because the Suquamish Fisheries Director

16   exercised executive authority in issuing hunting licenses the Defendants' motion to dismiss the

17   Director on the basis of legislative immunity is DENIED.

18   **II.**     **FAILURE TO JOIN INDISPENSABLE PARTIES**

19     **A. Standard of Review**

20         A Rule 12(b)(7) motion to dismiss for failure to join an indispensable party under Rule

21   19 is subject to a three-step inquiry: (1) is the absent party necessary under Rule 19(a), (2) is it

22   feasible to join that party, and (3) if not feasible, can the action proceed in equity and good

23   conscience absent the indispensable party, or must the action be dismissed? *See Salt River*

24

1   *Project Agric. Improvement and Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing

2   *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005)).

3   **B. Skokomish Cannot Join Indispensable Parties**

4          Defendants assert the Suquamish Tribe—not just its officers—and other Stevens Treaty

5   Tribes are indispensable parties because an order declaring Skokomish's primary right would

6   violate their claimed hunting rights in Twana Territory. Defendants argue Skokomish's claims

7   are functionally indistinguishable from its previous claims in *Skokomish Indian Tribe v.*

8   *Goldmark*, which Judge Robart dismissed for failure to join the other Point No Point Treaty

9   Tribes.

10          Skokomish contends its primary hunting right is settled law under Article IV of the

11   Treaty of Point No Point, and was confirmed by the court in *U.S. v. Washington*. It argues that

12   because it seeks only secondary confirmation of settled law the other signatory tribes are

13   unnecessary to the litigation. It claims its narrow request to confirm established law among these

14   tribes is materially different than its general request in *Goldmark* to define the scope of its treaty

15   hunting rights with respect to the State.

16          The Suquamish and other Stevens Treaty Tribes are necessary parties under Rule 19(a) if

17   (1) this Court cannot accord "complete relief among existing parties" in the Tribes' absence, or

18   (2) proceeding in the Tribes' absence will "impair or impede" the Tribes' ability to protect a

19   "claimed legal interest" relating to the action, or "leave an existing party subject to a substantial

20   risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

21   *See Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013). A necessary party becomes indispensable

22   if the action cannot proceed in equity or good conscience in the party's absence. *See Makah*

23   *Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

24

1    Skokomish's claim necessarily rests on the accuracy of its assertion that its primary

2    hunting right in Twana Territory is settled law. But Skokomish's right is far from clearly

3    established. Article IV of the Point No Point Treaty reserved to all four signatory tribes "the

4    privilege of hunting and gathering roots and berries on open and unclaimed lands," without

5    reference to a primary right. The court in *U.S. v. Washington* did not clearly establish

6    Skokomish's primary hunting right because the case principally (if not exclusively) concerned

7    fishing rights. The Suquamish and other Stevens Treaty Tribes with hunting and gathering rights

8    in the subject area have a "claimed legal interest" to Twana Territory hunting rights. A

9    declaration that Skokomish "has the primary right to regulate and prohibit treaty hunting and

10   gathering within Skokomish (or Twana) Territory" will necessarily impact absent signatory

11   tribes. *See Goldmark*, 944 F. Supp. 2d at 1187. A favorable decision would also leave both

12   parties subject to multiple or otherwise inconsistent results in future litigation. It is very likely

13   that if the Court entered a judgment impacting treaty hunting rights of Suquamish and other

14   Stevens Treaty Tribes, these tribes would seek legal recourse. Based on the foregoing, the Court

15   concludes the Suquamish and other Stevens Treaty Tribes with claimed hunting rights in the

16   Twana Territory are necessary parties.

17   As discussed, sovereign immunity precludes nonconsensual actions in federal court

18   against federally-recognized Indian tribes, including the Suquamish and other Stevens Treaty

19   Tribes. *See Bodi*, 832 F.3d at 1016. These tribes may not be joined as parties absent clear waiver

20   of sovereign immunity. *See Oklahoma Tax Comm'n*, 498 U.S. at 509. None of these tribes

21   explicitly waived their sovereign immunity from suit regarding their Point No Point or Stevens

22   Treaty hunting rights, thus none can be joined under Rule 19.

23

24

The Court must therefore determine whether in "equity and good conscience" the action can proceed absent the necessary tribes. *See* Fed. R. Civ. P. 19(b). Rule 19(b) provides four factors for determining whether a suit can proceed under such circumstances: (1) whether the judgment may prejudice existing or absent tribes, (2) the potential for lessened or avoided prejudice, (3) whether a judgment rendered in the tribes' absence would be adequate, and (4) whether Skokomish would have an adequate remedy if the action is dismissed. *See id.*; *see also Makah*, 910 F.2d at 560.

The prejudice analysis is substantially identical to the legal interest test under Rule 19(a). *See Skokomish v. Goldmark*, 994 F. Supp.2d at 1190. A judgment in favor of Skokomish's primary hunting right under the Point No Point Treaty requires a finding that each of the other signatory tribes to the Point No Point Treaty, the Point Elliot Treaty, and the Medicine Creek Treaty possess inferior hunting rights, subservient to the Skokomish Tribe's primary right in Twana Territory. There is no practical way to lessen or avoid this prejudice. The inherent prejudice to absent tribes strongly supports the conclusion that the court cannot proceed in their absence.

The "interest of the courts and public in complete, consistent and efficient settlement of controversies" similarly weighs against proceeding. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). It is very likely that other signatory tribes will seek to re-litigate a declaration of Skokomish's primary hunting right because it will unavoidably deprive them of their own claimed treaty hunting rights. Because a judgment of this Court cannot bind absent tribes, these tribes may re-litigate their rights in subsequent judgments that might produce inconsistent results. Such a judgment would not be complete or efficient in the interest of the

1    public or the courts. This factor weighs against proceeding in the absence of the other treaty

2    tribes.

3          If *U.S. v. Washington* confirmed Skokomish's primary hunting right, the Court should

4    dismiss this action and permit Skokomish to file a subproceeding there. But even if Skokomish

5    has no alternate forum, such a reason without more is insufficient to proceed in the absence of

6    necessary parties. *See White v. University of California*, 756 F.3d 1010, 1028 (9th Cir. 2014)

7    ("virtually all the cases… appear to dismiss under Rule 19, regardless of whether a remedy is

8    available, if the absent parties are Indian tribes invested with sovereign immunity."); *see also*

9    *Goldmark*, 994 F. Supp. 2d at 1192 ("The Ninth Circuit has consistently held that a tribe's

10   interest in sovereign immunity outweighs the lack of an alternative forum."). After all, "not all

11   problems have judicial solutions." *U.S. v. Washington*, 573 F.3d 701, 708 (9th Cir. 2009).

12         For the foregoing reasons, in "equity and good conscience" the Court GRANTS

13   Defendants' motion to dismiss for failure to join indispensable parties.

14   **III.    LEAVE TO AMEND**

15         Skokomish has not asked for leave to amend its complaint in lieu of dismissal.

16   Nevertheless, the Court will consider the question because on a 12(b)(6) motion, "a district court

17   should grant leave to amend even if no request was made, unless it determines that the pleading

18   could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Lieche v. N. Cal.*

19   *Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990); *see also* Fed. R. Civ. P. 15(a)(2) ("The court

20   should freely give leave when justice so requires."). If *U.S. v. Washington* truly confirmed

21   Skokomish's primary hunting right, Skokomish's claim must be filed as a subproceeding in that

22   case. Even if it did not, amendment of the claims asserted would not and could not remedy the

23

24

1 │ fact that it cannot adjudicate its right absent the other interested tribes, and it cannot join those

2 │ tribes. Filing an amended complaint would be futile.

3 │ **IV.      CONCLUSION**

4 │         Defendants' Motion to Dismiss [Dkt # 15] for Skokomish's failure to join indispensable

5 │ parties is GRANTED. Skokomish's claims are DISMISSED WITHOUT PREJUDICE.

6 │         Dated this 23rd day of March, 2017.

7 │

8 │                                                    Ronald B. Leighton

9 │                                                    Ronald B. Leighton
  │                                                    United States District Judge